CHARLES BEINDORFF, APPELLANT, V. DAVID KAUFMAN
ET AL., APPELLEES.

FILED SEPTEMBER 19, 1894.   No. 5134.

**Duress:** EXECUTION OF MORTGAGE BY PARENTS UNDER THREATS
TO PROSECUTE SON: GUILT OF SON: COMPOUNDING FELONY.
As bearing upon the defense of duress *per minas* interposed
against the foreclosure of a mortgage, the actual guilt of a son
is not material where his parents have been compelled to make
such mortgage to secure his debt by alternative threats to begin,
and promises to forbear, a prosecution against him solely condi-
tioned upon the consent or refusal of his parents to make the
mortgage demanded.

APPEAL from the district court of Douglas county.
Heard below before HOPEWELL, J.

The opinion contains a statement of the case.

*Cowin & McHugh* and *C. W. Haller,* for appellant:

The facts and circumstances of the case as disclosed by
the record do not in law constitute duress or undue influ-
ence. (*Sanford v. Sornborger,* 26 Neb., 295; *Hilborn v.
Bucknam,* 78 Me., 482; *Mundy v. Whittemore,* 15 Neb.,
647; *Sornborger v. Sanford,* 34 Neb., 498; *Compton v.
Bunker Hill Bank,* 96 Ill., 301; *Greene v. Scranage,* 19
Ia., 461; *Landa v. Obert,* 45 Tex., 539; *Weber v. Barrett,*
25 N. E. Rep. [N. Y.], 1068; *Harmon v. Harmon,* 61
Me., 227; *Bodine v. Morgan,* 37 N. J. Eq., 426; *Fulton
v. Hood,* 34 Pa. St., 365.)

The execution and acknowledgment of the mortgage in

question was an act of the will and the judgment of the grantors,—a deliberate conviction, after consultation with counsel and interchange of views between themselves and relatives, of what was best to be done under the circumstances. (*Weber v. Barrett*, 25 N. E. Rep. [N. Y.], 1068; *Greene v. Scranage*, 19 Ia., 466 ; *Harmon v. Harmon*, 61 Me., 227; *York v. Hinkle*, 50 N. W. Rep. [Wis.], 895; *Prichard v. Sharp*, 51 Mich., 432; *Gates v. Shutts*, 7 Mich., 127.)

After the execution of the mortgage, the same was ratified by the grantors and acted upon by the grantee, and defendants cannot now insist upon a rescission of the contract. (Lawson, Property Rights, sec. 2367; Leake, Contracts, 425; *Bodine v. Morgan*, 37 N. J. Eq., 426; *Sanford v. Sornborger*, 26 Neb., 295; Maxwell, Code Pleading, pp. 433–436.)

*L. D. Holmes, contra:*

The grantors were induced to make, execute, and deliver the mortgage in controversy through fear and by threats of appellant to prosecute and imprison their son, and by the fraud and imposition practiced by appellant's agents in securing the same. The mortgage was also made to stifle prosecution, and is illegal and void. (*Munson v. Carter*, 19 Neb, 293 ; *Hansen v. Berthelsen*, 19 Neb., 433 ; *Whelan v. Whelen*, 3 Cow. [N. Y.], 537; *Hugnenin v. Baseley*, 14 Ves. [Eng ], 273 ; *Sands v. Sands*, 112 Ill., 225; *Smith v. Kay*, 7 H. L. Cases [Eng.], 779; *Harris v. Carmody*, 131 Mass., 51; *Williams v. Bayley*, 14 L. T. Rep. [Eng.], 802; *Coffman v. Lookout Bank*, 40 Am. Rep. [Tenn.], 35; *Eadie v. Slimmon*, 82 Am. Dec. [N. Y.], 396; *Greene v. Scranage*, 19 Ia., 461; *Gohegan v. Leach*, 24 Ia., 509; *Singer Mfg. Co. v. Rawson*, 50 Ia., 634; *Line v. Blizzard*, 70 Ind., 23; *Foley v. Greene*, 51 Am. Rep. [R. I.], 419; *Adams v. Irving Nat. Bank*, 116 N. Y., 606; Story, Equity Jurisprudence, secs. 239–251, 294 ; 2 Pomeroy, Equity Juris-

prudence, secs. 942, 943; *Lomreson v. Johnston*, 44 N. J.
Eq., 93; *Ingersoll v. Roe*, 65 Barb. [N. Y.], 346; *Hull-
horst v. Scharner*, 15 Neb., 57; *Fisher v. Bishop*, 108 N.
Y., 25; *Barry v. Equitable Life Ins. Co.*, 59 N. Y., 587;
*Shaw v. Reed*, 30 Me., 105; *Roll v. Roguet*, 4 O., 419;
*James v. Roberts*, 18 O., 548.)

The appellees are not estopped to make their defense.
An action for relief on the ground of fraud may be com-
menced at any time within four years after discovery of the
facts constituting the fraud, or of facts sufficient to put a
person of ordinary intelligence and prudence on an inquiry
which, if pursued, would lead to such discovery. (*Parker
v. Kuhn*, 21 Neb., 413; *Hellman v. Davis*, 24 Neb., 793;
*Wright v. Davis*, 28 Neb., 479.)

RYAN, C.

This action was for the foreclosure of a mortgage secur-
ing the payment of three promissory notes given by David
Kaufman and Kaufman Bros. to Charles Beindorff. The
mortgage was made by Levi Kaufman and his wife, the
parents of the makers of said notes. The defenses inter-
posed by the mortgagors were duress, and that the mort-
gage was given to compound a felony, alleged to have been
committed by David Kaufman. From a decree canceling
the aforesaid mortgage an appeal has been taken to this
court.

On the trial there was introduced evidence, and in this
court argument is directed to the consideration that Levi
Kaufman, with his associates, had, previous to the execu-
tion of the mortgage, received transfers of all the property
of which David Kaufman and Kaufman Bros. were own-
ers. No averments of the petition, however, warrant an
inquiry as to whether or not Levi Kaufman held this
property as trustee, and whether or not there were circum-
stances which rendered it but equitable that he should se-
cure the claim of appellant. The action was one simply

for a foreclosure, in which, after several amendments, there
were, beside the usual averments in such cases, statements
as to an extension of time and the surrender of collaterals
obtained by giving the mortgage in question.    The finding
of the trial court was that there was a sufficient considera-
tion to sustain the mortgage, so that it is unnecessary to
consider circumstances other than those tending to prove or
disprove that the mortgage was procured by duress, or was
given in consideration of compounding a felony.

On the 24th day of December, 1887, appellant sold his
cigar and tobacco store in Omaha to Kaufman Bros., a
firm composed of David Kaufman and Isaac Kaufman.
As part payment the notes hereinbefore referred to were
executed, each for the sum of $1,000.    As security for the
payment of these notes David Kaufman assigned and de-
livered to appellant certain executory contracts and notes.
These contracts had been made by David Kaufman to
George M. Winkleman and Thomas Bethel, and provided
that upon payment of the entire sum of $2,600, evidenced
by the notes of Winkleman and Bethel to David Kauf-
man, the said Kaufman would convey the property, which
was the subject-matter of the contracts, to Winkleman and
Bethel.    These executory contracts and these notes were
those assigned as collateral by David Kaufman to appel-
lant.    These executory contracts were never recorded,
neither was the assignment of them, and David Kaufman,
taking advantage of this want of notice, was able to, and
did, mortgage the land described in the executory contracts
aforesaid to John L. Miles on December 29, 1887.    When
this was discovered by appellant's attorney he prepared
a complaint against David Kaufman upon a criminal
charge under section 28, chapter 32, Compiled Statutes,
and under section 127 of the Criminal Code.    This com-
plaint was sworn to by Otto Beindorff, son of appellant.
With this complaint in his possession, and two deeds neces-
sary to cure defects in title to the land upon which a mort-

gage was desired, appellant's attorney and Otto Beindorff
called on David Kaufman.    Mr. Haller, the aforesaid at-
torney, then told David Kaufman that he had come on be-
half of appellant with respect to the notes in controversy
and to secure which said Kaufman had given certain real
estate contracts and notes, and charged that since transfer-
ring said contracts he, the said David Kaufman, had mort-
gaged the property in said contracts described to John L.
Miles without disclosing to Miles the prior sale of said land
contracts; that the mortgage itself showed that it had been
taken with warranties of title in the said David Kaufman
against the existence of any incumbrances.    David Kauf-
man admitted that these charges were true, but said he had
no other security which he could pledge.    Mr. Haller then
told him that he had brought a mortgage (describing it),
ready for execution; that he had found the title first in
David Kaufman, by whom it had been transferred to Da-
vid's father by quitclaim deed in which David's wife had
not joined, and he urged that David's father and mother
should sign the above mortgage, and said that if there was
not ·executed a proper quitclaim deed by David and his
wife, and the proposed mortgage by David's father and
mother, that on behalf of appellant he would begin a prose-
cution against David upon the information which he then
read to David.    Upon the suggestion of Mr. Rosenfield, a
brother-in-law of David, all parties present went to the
office of Mr. Ervin, an attorney at law, to whom was stated
the charges against David, in substance as above set forth.
Mr. Ervin thereupon inquired of David whether or not
these charges were true, to which inquiry David replied
that he guessed the charges were true.    To Ervin's inquiry
whether or not David's father would sign the mortgage,
David said he would, that his father would do anything
for him.    A messenger was sent for David's father, Levi
Kaufman, who at once came to Ervin's office.

As the finding of the trial court sustained the plea of

duress, it is necessary only to inquire whether or not there was sufficient evidence to sustain that finding.    The trial took place in June, 1891, at which time Levi Kaufman testified that he would be seventy-five years of age in the winter following; that when he went into Mr. Ervin's office Mr. Haller said, "I want you to sign a mortgage;" that witness said, "I will sign no mortgage;" that Mr. Haller said, "If you do not sign that mortgage I will send your son to Lincoln to-night in prison;" that witness still refused to sign the mortgage; that witness then left the room and met his son David, who asked him to sign it, which witness refused to do, saying, "I will not sign my property,—my home;" that David began to cry and said to witness, "For mercy sake, for my children and me, sign it;" that witness thereupon signed it.    It is rendered quite probable by the testimony of other witnesses that there was no threat to commit David to prison in Lincoln on the evening referred to, but the testimony is uncontradicted that Levi Kaufman was given to understand by Mr. Haller that unless the mortgage was signed there would be commenced a prosecution against David that same night, though the conversation referred to was between the hours of 6 and 7 o'clock in the evening.    After Levi signed the mortgage it was the same evening taken to David's mother, who also signed it.    She was at that time about sixty-three years of age.    The testimony of both these parents was that the mortgage was signed solely to prevent a criminal prosecution of their son David.    It is urged, however, in argument that the fact that the proposed prosecution was for an admitted crime relieved the transaction of the imputation of duress, and in support of this contention the case of *Sanford v. Sornborger,* 26 Neb., 295, is cited.    If the mortgage in question had been given by David Kaufman, this case would be in point, for David could not be heard to complain of the logical effect of his own confessed misconduct.    As against David's

parents, however, no such consideration, has force.    By threats of a prosecution of their son if they did not incumber their home, and the promise that no prosecution would be commenced if they did, this mortgage was obtained to secure a debt for which the mortgagors were in no way liable.    This result was attained by appealing to their fears and the love of their offspring.    The motive, therefore, can hardly be classed with that of a felon seeking to avoid the punishment of his crime.    As an original proposition, it might be that we should not have reached the same conclusion of fact as that reached by the trial court upon conflicting evidence.    This result is, however, not without sufficient support, and we therefore accept as proved the results necessarily implied in the finding of the trial court.

It is argued that there was a ratification of the mortgage by payments having been made on the notes by Levi Kaufman and his wife.    There were payments made, but there was no direct evidence whether these payments were made by Levi Kaufman or not.    Certainly they were not made by his wife.    Levi Kaufman, in direct terms, testified that he in no way made or was a party to such payments.    At any rate, we cannot see that these payments, if made by Levi, were of any great controlling force, for neither Levi nor his wife had ever agreed to make payments.    They only gave security that David would pay; hence, such payments as were made were only in discharge of David's undertaking.    There appears no change in the status of appellant superinduced by these payments, neither does the failure of Levi and his wife to insist that the mortgage was void *ab initio* seem in any way to have prejudiced his rights.    The judgment of the district court is

AFFIRMED.