JUSTINA C. CAREK, APPELLEE, V. HERMAN J. SCHMIDT ET AL., APPELLANTS.

FILED APRIL 6, 1934. No. 28913.

*H. A. Bryant* and *Charles H. Hood*, for appellants.

*Charles H. Slama, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and MESSMORE, District Judge.

DAY, J.

On October 8, 1928, Justina C. Carek signed a note for $5,000 in favor of the Oak Creek Valley Bank and at the same time executed an assignment to the same bank of a life insurance policy. She brings this suit to cancel note and assignment of insurance policy alleging that they were obtained by fraud, coercion, duress, pressure, fear, and persecution overcoming her will. The trial court found for plaintiff, ordered cancelation of the note and assignment, and return of the policy to plaintiff.

The transaction arose in connection with the State Bank of Touhy. The State Bank of Touhy, the Oak Creek Valley Bank, and the Saunders County National Bank of Wahoo were all controlled and under the management of F. J. Kirchman. C. C. Carek, brother of the plaintiff, was for some years cashier of the State Bank of Touhy, and in October, 1928, was unable to account in full for the funds of the bank. Justina C. Carek was as a girl of 17 employed in the Touhy State Bank in 1920, and she continued to work there regularly until the spring of 1928, when she was unable to do so on account of her health. She was employed in the bank to do clerical work and was not an officer and had nothing to do with the management of the bank. It fairly appears from the record that she was in no way connected with the shortage of her brother. On Sunday afternoon, October 7,

1928, following a telephone conversation between Petermichel and Carek, Carek accompanied by his wife and his sister, the plaintiff, went to Petermichel's home in Valparaiso for a conference. The purpose of this visit was to discuss C. C. Carek's shortage to the bank of Touhy. The plaintiff and her sister-in-law, Mrs. Carek, testified that Petermichel insisted upon the plaintiff giving this note and assignment of the insurance policy to raise a part of the money to cover this shortage, stating that, if plaintiff failed to do so, her brother would go to prison, and that she might also be involved, because she had worked in the bank. The plaintiff had been very ill for six months, confined, except for a small portion of each day, to her bed. Under these conditions and circumstances, she agreed to execute the note and the assignment, whereupon Petermichel told her to call upon F. J. Kirchman at the Saunders County National Bank after banking hours the next day and fix the matter up. Petermichel and Kirchman were managing officers of both banks. The following afternoon, October 8, the plaintiff went to the Saunders County National Bank to see Mr. Kirchman as directed by Petermichel. She was taken into the bank about 5 o'clock in the evening, after banking hours, by Mr. Kirchman, who talked to her along very much the same line as Petermichel had the day before. She testified that she was very ill and nervous and somewhat hysterical, and that Mr. Kirchman directed her to go to the rest room and compose herself. At that time she signed the note and the assignment of the policy, and in addition she signed an exhibit in the record authorizing the Oak Creek Valley Bank to pay to her brother the proceeds of the $5,000 note which was given to assist her brother who was in financial straits. This statement also declares that it was signed of her own free will and accord, without solicitation on the part of the Oak Creek Valley Bank, and further that no officer of the State Bank of Touhy, of the Saunders County National Bank of Wahoo, or of the Oak Creek Valley Bank requested or

solicited her to sign said note. It seems to be a fair inference that this statement was required to meet the contention which the plaintiff has raised in this case, that at that time F. J. Kirchman anticipated that such a contention might be made. Comment upon this statement is unnecessary: It "doth protest too much." The note, the assignment of the insurance policy, and this statement were signed in the presence of F. J. Kirchman and his son-in-law, who witnessed the statement and acknowledged the assignment of the insurance policy as a notary public. It is significant that neither Kirchman nor Petermichel denies unequivocally the testimony of the plaintiff. A résumé of their testimony, as found in the appellants' brief, is: "Petermichel says that he didn't make the statements in the manner she testified to, and Kirchman says that he doesn't believe he made the statements which she claims he did." This court finds, as did the trial judge, that the note was procured in substantially the manner alleged by plaintiff. On October 8, 1929, the original note having become due, the plaintiff signed a new note for the same amount. The plaintiff made some objection to signing this note, but Petermichel insisted that she sign it, saying that, if she did not, it would open up the whole matter of her brother's defalcation again. This fairly presents the circumstances surrounding the execution of the note and leaves only for determination the effect upon the validity of the instruments. In *Hargreaves v. Korcek,* 44 Neb. 660, it was held: "Threats of prosecution and immediate imprisonment of the husband, when used to induce a man and his wife to execute and deliver a mortgage upon their homestead to secure the payment of a judgment against him, where the threats so overcome their wills as to induce them to affix their signatures to such mortgage and thus give a security which they would not voluntarily have executed, are sufficient to constitute duress and avoid the operation of the instrument so obtained." In *Hoellworth v. McCarthy,* 93 Neb. 246, this court held that a married woman was entitled to have a

lien canceled where she had involuntarily mortgaged her separate estate, where she was induced to execute a mortgage by threats to imprison her husband. Petermichel conferred with the plaintiff approximately two hours on Sunday afternoon, and as a result of this conference, she went to Wahoo the next day and completed the transaction after a conference with Kirchman and his son-in-law, at which conference her brother was not present. One who involuntarily signs note and assignment of an insurance policy to bank may have them canceled in suit in equity where she was induced to execute note and assignment by suggestion of officer of bank that unless she did so her brother would be arrested and sent to prison and that she herself would be involved. In this case plaintiff herself was not in fact involved and the actual guilt of her brother is immaterial where she was compelled to sign by officers of bank to which note was payable, causing her first to fear his arrest and imprisonment and then to hope that this would be avoided if she signed the note and executed the assignment of the insurance policy. *Beindorff v. Kaufman,* 41 Neb. 824.

The appellants contend that the execution of a renewal note was a recognition of the original note as valid. Numerous cases are cited to support this contention which we have not examined because not applicable to this case. The record discloses that there was a continuing threat used to compel plaintiff to sign the renewal note. If she did not sign it, the whole matter of her brother's defalcation would be reopened. In *Farmers State Bank v. Dowler,* 112 Neb. 262, this court discussed this proposition and held: "Any wrongful influence designedly exerted by an interested party and producing a condition of mind that deprives the other party of the exercise of his free will may amount to duress and invalidate a contract signed while the influence prevails." In the case at bar, the original note was secured by duress in that the interested party produced a condition of mind that deprived the plaintiff of her free will and this condition prevailed

even to the time when the renewal note was executed. The note and the assignment of the insurance policy should be canceled and the insurance policy ordered returned to the plaintiff.

The argument that the Oak Creek Valley Bank parted with money for this note to make up Carek's shortage in the Touhy bank is without any legal effect in this case, since the managing officers of one bank were also managing officers of the other, and we have repeatedly held that the knowledge of officers of a bank is the knowledge of the bank. These same officers procured this note by means of duress. The bank could not have collected and the receiver of the bank and the depositors' committee to whom the receiver assigned this note are in the same situation. This unsatisfactory transaction with its irregularities, and its consequences, must be charged to the officers of the bank, and not to this plaintiff.

AFFIRMED.