A. W. PADGET ET AL. V. CORNELIUS J. O'CONNOR.

FILED MARCH 2, 1904. No. 13,345.

1. **Promissory Note:** LEGALITY. Where an illegal transaction constitutes a part of the consideration for a promissory note, the other portion of the consideration being lawful, the illegality of the part taints the whole consideration, and the courts will not enforce the collection of such a note in the hands of the original parties.

2. **Directing Verdict.** Where there is conflicting evidence with regard to whether or not the holder of a negotiable promissory note is an innocent purchaser, for value, before maturity, the question is a question of fact for the jury, and it is error for the court to direct a verdict for the plaintiff.

ERROR to the district court for Cuming county: JAMES F. BOYD, JUDGE. *Reversed.*

*Anderson & Keefe* and *McNish & Graham,* for plaintiffs in error.

*R. E. Evans, contra.*

Letton, C.

This action was brought by Cornelius J. O'Connor, as plaintiff, against A. W. Padget, T. J. Foley and John C. Sullivan, as defendants, to recover the amount due upon two promissory notes, on the face of which the said Padget and Foley appeared as makers, and John C. Sullivan as payee and endorser. O'Connor alleged he had purchased these notes before maturity, in the usual course of business, for a valuable consideration, from the defendant John C. Sullivan. The defense set up by Padget and Foley, in substance, is that the notes were given by Padget as principal, and Foley as surety, to one E. E. Sullivan, in part payment of the purchase price of a stock of liquors, saloon fixtures and the unexpired term of a saloon license in Bancroft, Nebraska. That, for the purpose of defrauding his creditors, E. E. Sullivan procured the notes to be made payable to John C. Sullivan, his brother, instead of to himself; that a part of the consideration for the same was illegal, being for the six months unexpired term of the license of E. E. Sullivan, and that Sullivan delivered the possession of the saloon to Padget, and Padget sold liquor for himself under Sullivan's license for six months, as agreed, and that O'Connor had knowledge of all these facts and was not an innocent purchaser of the notes. A further defense was, in substance, that the Fred Krug Brewing Company procured a judgment against E. E. Sullivan in the county court of Cuming county. That an execution was issued and returned unsatisfied upon said judgment. That garnishment proceedings were had after the return of said execution, and that Padget, Foley and the Citizens Bank of Bancroft, which was then in possession of the notes sued upon as agent of O'Connor,

were garnished in said action.  That the bank answered admitting that it had possession of the two notes and delivered the same under the order of the county court to the court.  That the court found that the notes were the property of E. E. Sullivan, and subject to the judgment of the Fred Krug Brewing Company.  That Padget and Foley paid into said county court of Cuming county the amount due on said notes, and that the county judge marked them as paid, and applied the money in payment of the judgment of the Fred Krug Brewing Company against E. E. Sullivan.  The plaintiff replied denying the allegations of the answers, and alleging that the notes had been made payable to John C. Sullivan in payment of a debt from E. E. Sullivan to him.

At the trial in the district court, the original notes were introduced in evidence.  The record of the proceedings in garnishment before the county court of Cuming county was excluded from the jury upon the objection of O'Connor, and a verdict was directed for O'Connor against the defendants, Padget and Foley.  From this judgment they prosecute error to this court.

At the trial, O'Connor testified that he purchased the notes from John C. Sullivan, by applying them in payment of a debt due from Sullivan to him for rent of land in the Winnebago reservation, and by paying the sum of $170 in cash to make up the amount of the notes; that he knew nothing of any transaction between the two Sullivans as to a transfer of the notes for the purpose of defrauding creditors, or whether it was for the sale of a license or not; that he did not know that a saloon license had been sold; that, at the time of the maturity of the notes, the notes were sent to the Citizens Bank of Bancroft for collection, by his direction.

L. H. Keefe, one of the attorneys for the defendants, testified that he had a conversation with Mr. O'Connor over the telephone, and that he asked O'Connor if he knew, at the time he bought the notes, that they were given for the stock of liquors, the fixtures and the unexpired term

of the license, and that O'Connor said that he had not bought the notes but had them for collection; that Sullivan had explained the transaction to him, and that he knew the license was included. Padget testified that the notes were given for the balance due upon the purchase of the saloon; that he was to give $1,597.83 for the fixtures, the liquors and the unexpired license; that the saloon was to be run by Padget, in the name of E. E. Sullivan, for the unexpired term of six months. O'Connor, in rebuttal, denies the conversation to which Keefe testifies, and, in turn, Keefe testifies denying a conversation which O'Connor says he had with him. At the conclusion of the testimony, the court sustained a motion for a direction to the jury to return a verdict for the plaintiff. A motion for a new trial was filed and overruled, and judgment rendered for the plaintiff. The plaintiffs in error complain that the trial court erred in excluding from the jury the record of the garnishment proceedings, whereby it was sought to prove that the notes had been paid. Upon an examination of the record, it appears that C. J. O'Connor, whose name appeared upon the back of said notes as indorser, indorsing the same to the Citizens Bank for collection, was not made a party to the garnishment proceedings. The notes show an indorsement in blank by John C. Sullivan, and also the indorsement, "Pay to Citizens Bank for return, C. J. O'Connor," and the protest attached thereto shows that the notice of protest was sent to John C. Sullivan at Hubbard, Nebraska, C. J. O'Connor at Homer, Nebraska, and to A. W. Padget at Bancroft, Nebraska. The fact that O'Connor apparently had an interest in these notes, would be apparent to the most casual observer when the garnishment proceedings were had. It would hardly seem necessary to say that O'Connor's claim of title to the notes could not be barred by garnishment proceedings to which he was not a party. The adjudication by the county court of Cuming county that the notes were the property of E. E. Sullivan, was an absolute nullity so far as O'Connor was concerned. The

record of the proceedings in garnishment was properly excluded by the court.

A more serious question, however, is presented by the action of the court in directing a verdict for the plaintiff. If the notes were based upon an illegal consideration, or upon a consideration a part of which was illegal, a defense sought to be made upon that ground between the original parties to the instrument would, if established, be a complete defense, and, if in the hands of any one but an innocent purchaser, the enforcement of the contract would be subject to the same infirmity. In the case at bar, Padget testifies that the notes were given in payment for a stock of liquors, for saloon fixtures and for the unexpired term of the license of E. E. Sullivan. That the agreement was that Sullivan should deliver possession of the saloon property and stock of liquors to Padget, and should allow Padget to run the saloon in Sullivan's name for six months, the length of time for which the license had been paid to the village of Bancroft. This testimony is uncontradicted. A license to sell liquor under the Slocumb law in this state is a personal privilege granted to the individual by the authorities, upon proof by him that he is possessed of certain qualifications, and in case he has not been guilty of certain prohibited acts. As a condition precedent to the issuance of the same, a petition praying the proper authorities to grant him a license must be presented, signed by a specific number of resident freeholders. One object of the law is to place it within the power of the resident freeholders of the ward or precinct to designate the individual whom they are willing should conduct the traffic in intoxicating liquors in their locality. The agreement between Sullivan and Padget, whereby Padget was to be allowed to conduct the liquor traffic under Sullivan's name for the unexpired term of Sullivan's license, was clearly an agreement to violate the laws of the state, and was illegal. A promissory note given with such an agreement as its sole consideration could not be enforced, and where, as in this case, the

illegal consideration forms a part of the whole considera-
tion, the courts will not undertake to separate the legal
from the illegal portions of the contract, but the whole
consideration is tainted by the illegality of the part, and
the contract will not be enforced.

"If any part of a consideration is illegal, the whole con-
sideration is void; because public policy will not permit
a party to enforce a promise which he has obtained by
an illegal act or an illegal promise, although he may have
connected with this act or promise another which is legal."
1 Parsons, Contracts, 457; Norton, Bills & Notes (2d ed.),
276; *Taylor & Co. v. Pickett,* 52 Ia. 467; *Wilde v. Wilde,*
37 Neb. 891; *Wilson v. Parrish,* 52 Neb. 6; *McCormick
Harvesting Machine Co. v. Miller,* 54 Neb 644; *McClel-
land v. Citizens Bank,* 60 Neb. 90. It is evident therefore
that, if the illegality of part of the consideration be es-
tablished, there could be no recovery upon these notes if
the action had been brought by Sullivan against Padget
and Foley. It becomes then a vital point in this case,
whether or not the plaintiff, O'Connor, was entitled to the
protection given by the law to an innocent purchaser of
negotiable paper before maturity. As to this point, O'Con-
nor's testimony in chief was to the effect that he was an
innocent purchaser, but, upon cross-examination, it was
developed that O'Connor had other dealings with the Sul-
livans; and the witness Keefe testified that O'Connor told
him that he had not bought the notes, but that he had
them for collection, and that he knew that the license was
included in the consideration. There is a direct conflict
in the testimony between these two witnesses. If O'Con-
nor's testimony is to be believed, he was an innocent pur-
chaser of the notes and should recover in this action. If
Keefe's testimony is most credible, then O'Connor merely
stood in the shoes of E. E. Sullivan, and the illegality of
the consideration, if established, furnished a complete
defense. Whether or not O'Connor was an innocent pur-
chaser was a question of fact that should have been sub-
mitted to the jury. It is possible that, had the question

been submitted to a jury, it might have found that the witness Keefe gave the true story of the conversation with O'Connor, and that O'Connor was not an innocent purchaser or *vice versa*. For the errors committed in sustaining the motion to direct a verdict for the plaintiff and in directing such verdict, we recommend that the cause be reversed and remanded for further proceedings.

DUFFIE and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.