CRISTY *v.* CAMPAU.

1. BILLS AND NOTES—ACCOMMODATION INDORSER—LIABILITY.
   An accommodation indorser of a promissory note cannot escape liability to a *bona fide* holder on the ground that his indorsement was procured by the false representations of the maker.

2. SAME—BAD FAITH—EVIDENCE—DUTY OF HOLDER—ESTOPPEL.
   One who, in the usual course of business, surrenders a promissory note for an indorsed note of one of the makers, is not chargeable with bad faith as against the indorser of the renewal note, whose signature was obtained by fraud, merely because he knows that the maker of such note is insolvent, and that the other makers of the prior note, who are amply responsible, have furnished him with funds with which to pay it; nor can an estoppel be predicated upon his failure to disclose such facts to the indorser, or to advise him that the note is a renewal note, since he has the right to assume that the maker has dealt honestly with the indorser, and obtained his signature fairly, and without false representations, or the concealment of any facts which the law required him to disclose.

Error to Wayne; Lillibridge, J. Submitted November 6, 1895. Decided November 26, 1895.

*Assumpsit* by Harlan P. Cristy against Daniel J. Campau, impleaded with Frederick Marvin, upon promissory notes. From a judgment for plaintiff on verdict directed by the court, defendant brings error. Affirmed.

This action was brought upon two promissory notes, each in the sum of $2,000, dated August 4, 1893, made by Frederick Marvin, payable four months after date to his order, at the Third National Bank, with 7 per cent. interest. Both notes were indorsed by defendant Campau, and protested at maturity for nonpayment. The plaintiff became the owner of the notes, as follows: August 4, 1893, he was the president, and Marvin the cashier, of the Third National Bank. At that time the plaintiff owned two notes, then past due, each in the sum of $7,500, made by Reuben Kempf, Gilbert W. Lee, William A. Jackson, C. E. Warner, E. C. Chase, and Frederick Marvin, which he had purchased through defendant Marvin before maturity, and for which he had paid $15,000 in cash. There was certain real-estate security to the notes last described, with other notes, in the shape of a deed of Texas land to defendant Marvin, which he held as a trustee for the makers. On said 4th day of August, 1893, at the request of the defendant Marvin, the plaintiff accepted a renewal note for one of the $7,500 notes above specified, and for the other the two notes in suit, then indorsed by the defendant Campau and the payee, amounting to $4,000, and the note of the defendant Marvin for $3,500, unindorsed, the latter on the promise that an indorser for it would be secured; and thereupon he delivered to the said Marvin the said two $7,500 notes. The makers of the $7,500 notes were abundantly able to pay them, and the plaintiff so regarded them. The indorsement by defendant Campau of the notes in suit was at the request of defendant Marvin, and as an accommo-

dation to him, and on his representation that he required the indorsement to raise $4,000, to enable him to protect some securities he had hypothecated, and that he (Marvin) was going to Chicago, and would discount the paper there. Some two or three days prior, Marvin had asked plaintiff if he would settle with him for the two $7,500 notes, saying he would pay cash or give good indorsed paper. Plaintiff did not know that Marvin was going to get Campau as an indorser, or whose indorsement he was going to get, nor did he say anything to Marvin about getting Campau's indorsement. When speaking of the indorsements he could get, Marvin mentioned the names of Jake Seligman, C. J. Whitney, and defendant Campau. Plaintiff first knew Marvin had selected defendant Campau when the notes, with his indorsement, were presented to him in part payment. Plaintiff, a witness for the defendant, testified that, prior to the arrangement whereby plaintiff acquired the notes in suit, William A. Jackson, one of the makers of the $7,500 notes, had said to him that "Mr. Marvin had received money to pay the syndicate notes. All he said was that a part of the money had been paid to Mr. Marvin to take care of these notes." Plaintiff closed with Marvin without going into the subject of the sum received. He had no understanding with the makers of the $7,500 notes, or any of them, as to getting Campau's indorsement, or any indorsement, or about pressing this suit. He had no reason for the transaction except that Marvin wished him to do it, and he considered the notes indorsed by Campau good, and, while he had at first objected to surrendering the $7,500 note until Marvin should get an indorser on his $3,500 note, he finally closed on Marvin's assurance that he would get C. J. Whitney or Jake Seligman on the $3,500 note. The bank was in no way interested in or connected with the matter.

*Edwin F. Conely* and *Orla B. Taylor*, for appellant.
*De Forest Paine*, for appellee.

GRANT, J. (*after stating the facts*). The court properly directed a verdict for the plaintiff. The record is barren of any testimony tending in the slightest degree to show a collusion between Mr. Cristy and Mr. Marvin, or any knowledge or information on the part of Mr. Cristy of the representations made by Marvin to the defendant. Plaintiff had two good promissory notes, for $7,500 each, for which he had paid $15,000. Mr. Marvin asked him to surrender one of these notes, and accept in lieu thereof another note or notes, to be indorsed by one of three parties, of whom defendant Campau was one. He was willing to accommodate Mr. Marvin in this manner, and there was no legal or moral reason why he should not. Nothing was said or done to warn him that Marvin was attempting to perpetrate a fraud, or to obtain a signature by false representations. He parted with full value, and trusted Mr. Marvin to secure an indorser on the $3,500 note, which, it appears, was not done. He is therefore entitled to protection, unless there is legitimate evidence to establish his participation in the fraud.

Plaintiff cannot be held estopped by any action or representation of Marvin upon the ground that he kept silent when he should have spoken. The note was brought to him in the usual course of such transactions, and without knowledge of anything that had passed between defendant and Marvin. He was under no legal or moral obligation to inform Mr. Campau that Mr. Marvin was insolvent, or that these notes were given as part renewals of another, or that Mr. Marvin had received part or all the money with which to pay the former notes. He had the legal right to assume that Mr. Marvin had dealt honestly with Mr. Campau, and had obtained his signature fairly, and without any false representations, or concealment of any facts which the law required him (Marvin) to disclose.

The judgment is affirmed.

The other Justices concurred.