## BEATH *v.* CHAPOTON.

1. NOTES—DURESS OF IMPRISONMENT—EMBEZZLEMENT.

One who, having embezzled money from his employer, gives his promissory note in settlement and acknowledgment of the debt, cannot defend an action upon the note on the ground that his signature was obtained under duress, consisting of threats to arrest and imprison him for the crime.

2. SAME—CONSIDERATION.

A note executed in settlement of a charge of embezzlement is valid in the hands of the payee only to the extent of the moneys misappropriated.

3. SAME—FRAUD ON INDORSER—KNOWLEDGE OF PAYEE.

One who is induced to indorse a note, given in settlement of a charge of embezzlement, through the maker's representation that the note is for the purchase of an interest in the payee's business, is not liable to the payee if the latter knew of the means by which the indorsement was to be secured.

Error to Wayne; Donovan, J. Submitted October 12, 1897. Decided January 18, 1898.

*Assumpsit* by Thomas Beath against Louis C. Chapoton and Lewis C. Watson upon a promissory note. From a judgment for defendants, plaintiff brings error. Reversed.

Plaintiff sued upon a promissory note for $675, made by defendant Chapoton, and indorsed by defendant Watson. Each defendant gave notice of special defenses: Chapoton, that his signature was obtained under duress, consisting of threats to arrest and imprison him for the crime of embezzlement; defendant Watson, that his indorsement was fraudulently obtained by representations of Chapoton that the note was for the purchase of an interest by Chapoton in plaintiff's business, and that plaintiff knew of these representations. Defendants had verdict and judgment.

*Walter Barlow*, for appellant.

*John Considine, Jr.*, for appellee Chapoton.

*Alfred Lucking*, for appellee Watson.

Grant, C. J. (*after stating the facts*). 1. Complaint is made that the court erred in instructing the jury: "If you find that the note was obtained from Chapoton upon threats of criminal prosecution, plaintiff cannot recover." Counsel for defendants cite only one authority to support this instruction, viz.: *Hackley* v. *Headley*, 45 Mich. 574. The action in that case was upon a promissory note. The defense was duress, in that the plaintiffs took an unconscionable advantage of defendant's financial straits, thereby compelling him to accept $2,000 less than was his due. The defense was held bad. This case was approved and followed in *Goebel* v. *Linn*, 47 Mich. 489.

Chapoton had been for a long time in the employ of plaintiff, who claimed he had embezzled large sums of money. Plaintiff testified that Chapoton admitted the embezzlement; that it was agreed to amount to $2,700; that Chapoton agreed to give four notes of $675 each, to

be secured by indorsements, in settlement of the claim. He denied any threats to prosecute, and any knowledge of representations made by Chapoton to Watson. The record states that—

"Defendant Chapoton gave evidence tending to show that, a short time before these notes were given, Beath claimed that he (Chapoton) had embezzled money from the said Beath, and that he threatened to prosecute him, and put him in jail, and disgrace him; * * * and that he would not have executed such notes except for the fear of criminal prosecution, and on account of the threats so made by said Beath."

This statement is the sole foundation for claiming duress.

If Chapoton had embezzled money, and notes or other evidences of debt, with security, were given by Chapoton in settlement and acknowledgment of the debt, he could not defend upon the ground that plaintiff threatened criminal prosecution if his honest debt was not acknowledged and secured. *Wolf* v. *Troxell's Estate,* 94 Mich. 573. The law does not permit a criminal, who has stolen property, to defend against the debt, or its written acknowledgment, on the ground of threatened prosecution or imprisonment. Such a rule would often be attended with disastrous results. A party might settle his peculation by giving his notes, payable after the statute of limitations could be pleaded in bar of the original debt. If, instead of an indorsed note, Chapoton had given a note and mortgage for $2,700 (and he admits that he agreed to this amount, and to give four promissory notes therefor), would he be permitted to avoid his just liability by saying, "True, I owed it, but plaintiff threatened to prosecute me if I didn't pay it, and therefore I secured my honest debt?" The consideration for the note in such cases is not the avoidance of a criminal prosecution, but the just debt.

A. was convicted of larceny, and sentenced to pay a fine of $1,000, and was confined in prison. He executed a mortgage to the county for $1,000, in condition of which he was pardoned. He filed a bill in equity to set

aside the foreclosure sale on the ground of duress. De-
cree was entered for the amount actually due. *Rood* v.
*Winslow*, Walk. Ch. 340, 2 Doug. 68. Where W.
gave a mortgage for $5,000 to settle a charge of adultery,
the same defense was interposed. The securities were
held valid to the amount actually due, viz., $2,000.
*Briggs* v. *Withey*, 24 Mich. 136. B. paid license taxes
under threats of prosecution from the village attorney.
The taxes were void. Held, that they were not paid under
duress. *Betts* .v. *Village of Reading*, 93 Mich. 77. See,
also, *Cribbs* v. *Sowle*, 87 Mich. 347, and authorities there
cited.

"Duress by threats exists, not wherever a party has
entered into a contract under the influence of a threat, but
only where such a threat excites a fear of some grievous
wrong, as of death, or great irremediable injury, or *un-
lawful imprisonment*." 6 Am. & Eng. Enc. Law, 64.

Threats of criminal prosecution, unaccompanied by
threats of immediate imprisonment, do not constitute
duress. *Harmon* v. *Harmon*, 61 Me. 227 (14 Am. Rep.
556); *Buchanan* v. *Sahlein*, 9 Mo. App. 552; *Bodine* v.
*Morgan*, 37 N. J. Eq. 426; *Dunham* v. *Griswold*, 100
N. Y. 224. "Threat of legal process is not duress, for the
party may plead, make proof, and show that he is not
liable." *Preston* v. *City of Boston*, 12 Pick. 14. In
*Bodine* v. *Morgan, supra,* the defendants, father and son,
were charged with fraudulently taking and appropriating
business orders. The father settled, and gave a mortgage
of $5,000. His defense was substantially the same as that
here set up. The court used the following language:

"But, further, the threat to arrest him for his unlawful
appropriation of their orders and goods to his own use un-
less he should indemnify them, constituted, if it was made,
no duress; and, if the mortgage had been given under the
pressure of such a threat, it would not have affected its
validity."

It was incumbent upon defendant Chapoton to establish
two facts,—the illegality of the demand and the duress.

*Buchanan* v. *Sahlein, supra.* Defendant Chapoton was under no physical restraint. According to his own statement, plaintiff had previously made the claim of embezzlement, and threatened prosecution if it was not settled. Chapoton telephoned to his friend Watson, requesting him to call at plaintiff's store. Watson complied, and while the three were there together the notes were executed. There is no evidence of any threats or restraint at that time, no prosecution had been commenced, nor was there any statement that any had been commenced, and he was free to go and come as he chose. It therefore appears that Chapoton, after the alleged charge and threats were made, took ample time to consider it, and then voluntarily settled by giving these notes. This is not the course pursued by a man conscious of his innocence, and in the possession of his faculties. There is nothing to show that he was young or old, inexperienced, feeble in body or mind, or unable to indignantly deny and resist a false charge of embezzlement and felony. Under this record the only question to be submitted to the jury with regard to him was whether there was a failure of consideration, in whole or in part, for the notes. Under the above decisions, he was liable upon them to the extent of moneys appropriated by him, if any were so appropriated; and it was the province of the jury to determine the amount. If he had appropriated none of the plaintiff's money, of course the notes were without consideration, and void.

2. Complaint is made of the following instruction:

"It is not necessary that Beath should have known exactly the fraudulent representations made by Chapoton in order to get Watson to indorse the note. If he (Beath) had sufficient knowledge to put him upon inquiry, so that he could have found out that Watson had been so induced by fraudulent representations, then the plaintiff cannot recover."

If there were no evidence in the case to which this instruction was applicable, it would be error under the rule

in *Cristy* v. *Campau*, 107 Mich. 172. The record, how-
ever, states that there was "evidence tending to show
that plaintiff heard the conversation [between Chapoton
and Watson], and the false and fraudulent representations,
and at one point acquiesced in them; and that plaintiff
suggested to Chapoton that he (Chapoton) should tell his
proposed indorsers that the notes were to be given for ac-
quiring an interest in the business." In view of this evi-
dence, the instruction was correct. If plaintiff had knowl-
edge that Chapoton intended to make false representations
to secure indorsers, he could only relieve himself from the
consequences of such representations by informing the in-
dorser of the true state of affairs. Of course, the converse
of the proposition should be given to the jury, because the
plaintiff denied any knowledge of the false representations.

Judgment reversed, and new trial ordered.

The other Justices concurred.