McCORMICK HARVESTING MACHINE COMPANY V. HENRY MILLER ET AL.

FILED APRIL 21, 1898. No. 7994.

1. **Contracts: DURESS.** It is those contracts made under fear of unlawful arrest, and not those executed under threat of lawful imprisonment, which can be avoided on the ground of duress.

2. ———: COMPOUNDING FELONY. A contract, the consideration of which, in whole or in part, is the compounding of a felony or the stifling of a criminal prosecution, is contrary to public policy, illegal, and void.

3. ———: ———: RATIFICATION. The payment of money on an agreement to compound a felony cannot be considered as a ratification, since the contract was illegal and void and incapable of ratification.

ERROR from the district court of York county. Tried below before WHEELER, J. *Affirmed.*

*George B. France,* for plaintiff in error.

*F. C. Power, contra.*

NORVAL, J.

This was an action by the McCormick Harvesting Machine Company upon a written contract executed by the defendants and one George Miller, whereby they promised to pay plaintiff on March 1, 1888, the sum of $802.95, with interest thereon at the rate of eight per cent per annum from December 27, 1884. The execution of the contract is admitted, and the answer sets up that the same was obtained by duress, and that the consideration was the compounding of a felony. These averments were

put on the issue by the reply. The trial resulted in a verdict for the defendants, and to reverse the judgment entered thereon is the purpose of this proceeding.

C. D. Miller, of Westside, Iowa, is a brother of the defendant Henry Miller, and Belle Miller is the wife of the latter. C. D. Miller, while acting as agent for plaintiff, collected for it the sum of $802.95, which he converted and embezzled to his own use, and has never made restitution thereof to plaintiff. One A. W. Wass was employed by the company to call upon C. D. Miller at his home in Westside and settle said defalcation. Wass did as directed, and demanded security for the money. To this Miller replied that he had some brothers living in Nebraska who might come to his relief. It was suggested that the brothers be seen, and thereupon both started for Nebraska. While waiting for a train in Omaha, Wass had the contract in question drawn up, and he and C. D. Miller went to the defendants' home in York county, where the agreement was executed by them. It recites, substantially, that C. D. Miller, of Westside, Iowa, during the year 1884, while acting as agent of the McCormick Harvesting Machine Company, collected for it various sums of money aggregating $802.95, which he has retained; and the contract stipulates, *inter alia*, that in consideration that said company "shall release the said C. D. Miller from any further claim or demand, civilly or otherwise, on account of the money collected as aforesaid   *   *   *   we, the undersigned, promise and agree to pay to said McCormick Harvesting Machine Company the sum of $802.95 on the 1st day of March, 1888, with interest at the rate of eight per cent per annum.  *  *  *  And it is further agreed on the part of the said Henry Miller and Belle Miller, his wife, and George Miller that the foregoing indebtedness shall be a lien upon any and all real estate and personal property owned by us, whether exempt or not."

There was testimony introduced by the defendants tending to prove that at and prior to the execution of

the contract, and as an inducement to the defendants to sign the same, Wass, as agent of plaintiff, threatened to have C. D. Miller prosecuted and sent to the penitentiary, for the entire amount of the money belonging to plaintiff which he had collected and converted, unless security should be given for the amount converted, but that, if the defendant would sign the contract sued on, it would prevent any criminal prosecution from being brought against said C. D. Miller. Relying upon these statements and promises the contract was signed. Wass, on the other hand, testified positively no threats or promises of the character just stated were made by him to the Millers or either of them. The jury by their verdict have resolved all conflict in the testimony in favor of the defense, which finding this court declines to disturb.

It is insisted that C. D. Miller having embezzled the money of plaintiff, he was liable to a criminal prosecution, and therefore the mere threat to have him prosecuted for the crime did not constitute such duress as to avoid the contract in question. This position is entirely sound, since it is those contracts made under fear of unlawful arrest, and not those executed under threat of lawful imprisonment, that can be avoided for duress. (*Mundy v. Whittemore*, 15 Neb. 647; *Sanford v. Sornborger*, 26 Neb. 295.)

The evidence is sufficient to establish that the contract was given to compound a crime; in other words, that the consideration for the agreement and promise of the defendants was that C. D. Miller should not be prosecuted for embezzlement of plaintiff's money. This contract is against public policy, and is illegal and void. (*Biendorff v. Kaufman*, 41 Neb. 824; *Snyder v. Willey*, 33 Mich. 483; *Buck v. First Nat. Bank of Paw Paw*, 27 Mich. 293; *Springfield Fire & Marine Ins. Co. v. Hull*, 51 O. St. 270; *Friend v. Miller*, 52 Kan. 139; *Peed v. McKee*, 42 Ia. 689; *Smith v. Steely*, 80 Ia. 738; *Baird v. Boehner*, 77 Ia. 622; *Bowen v. Buck*, 28 Vt. 308; *Plummer v. Smith*, 5 N. H. 553.) The fact that the sum of $160 has been paid on

State v. Cornell.

the contract cannot be considered a ratification, since the agreement was illegal and void, and incapable of ratification.

The court below excluded from the jury the deposition of O. L. Binford, which ruling is now assailed. There was no error in this decision, since the testimony was hearsay, and did not tend to establish or disprove any issue in the case. We have examined the several rulings on the admission and exclusion of testimony, as well as the instructions given and refused, and discover no error therein prejudicial to the plaintiff. The judgment is

AFFIRMED.