## ANNA J. ENGLERT v. FRED V. DALE.

### (142 N. W. 169.)

**Mortgage — valid upon its face — fraud and duress — setting aside — proof — evidence.**

 1. Before a mortgage which is valid and regular upon its face can be set aside by a court of equity for the reason that its execution was obtained by fraud and duress, there must be clear and convincing proof of such facts.

---

Note.—The authorities on the question of the validity of a mortgage procured by threats of prosecution of relative are reviewed in a note in 20 L.R.A.(N.S.) 484.

**Evidence — insufficiency.**

2. Evidence examined and *held* not to furnish such clear and convincing proof.

**Threats of arrest — crime — mortgage — cancelation — loss — execution of mortgage.**

3. Threat of a lawful arrest for an offense which has actually been committed is not in itself a sufficient ground for the cancelation of the mortgage which has been executed as a result of such threat, and to secure the maker of the threat for the loss occasioned to him by the commission of such crime.

**Lands — homestead act — prior debts — patent — involuntary appropriation — mortgage — consideration.**

4. Section 2296, Rev. Stat. U. S. Comp. Stat. 1901, p. 1398, which provides that no lands acquired under the provisions of the homestead act shall in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor, is intended as a prohibition on the involuntary appropriation of the homesteader's land by way of execution or attachment, and does not contemplate a restriction upon his power to voluntarily mortgage his interest therein, and a release of such a mortgage may constitute a valid consideration for the execution of another by another person and upon a different piece of land.

### On Petition for Rehearing.

**Appeal — trial de novo — findings not conclusive — law — facts.**

5. In an appeal taken under § 7229, Rev. Codes 1905, and in which a trial *de novo* is asked, the supreme court is not concluded by the findings of the trial court either as to the law or as to the facts of the case.

**Mortgage — action to set aside — consideration — written instrument — burden of proof — plaintiff.**

6. The burden of proof in an action to set aside, for an alleged failure of consideration, a written instrument which is valid upon its face, is upon the plaintiff.

Opinion filed May 24, 1913.  On petition for rehearing, June 19, 1913.

Appeal from the District Court for Mountrail County, *Fisk*, J.

Action to set aside a real estate mortgage.  Judgment for the plaintiff, defendant appeals.

Reversed.

Statement by BRUCE, J.

This case comes before us for a trial *de novo* under the Newman act. The complaint, dated February 24, 1911, alleges that on the 21st day of

December, 1908, through fraud and coercion, duress and undue influence, the plaintiff executed to the defendant a mortgage on a quarter section of land. That said mortgage was and is entirely without consideration and foundation; that the plaintiff is an aged woman seventy-six years old (the proof showed sixty-seven), and of sickly, nervous disposition; that on the 21st day of December, 1908, one P. L. Higgins, an agent of the defendant, came to the plaintiff's land, having in his possession certain notes and a mortgage, and that he then and there requested the plaintiff to sign said notes and mortgage; that she refused to do so, and that thereafter and thereupon the said Higgins told plaintiff that her son, one C. L. Englert, had committed a criminal offense and had sold mortgaged property, and that unless she signed said notes and mortgage he would get out a warrant for the arrest of the said C. L. Englert and have him sent to the penitentiary; and that said P. L. Higgins then and there threatened to cause the arrest of her said son and send him to the penitentiary; and the said P. L. Higgins threatened to accuse the said son of a crime and felony if this plaintiff did not sign the notes and mortgage, and that by reason of the threat made by P. L. Higgins this plaintiff was put in great fear, and was coerced and by duress compelled to sign said notes and mortgage, and the signature of this plaintiff to said notes and mortgage was extorted from her by means of such threats against her son; that she would not have signed said notes except for the fear induced by such threats. Then follows a prayer for a cancelation of said notes and mortgage, and that the same be declared null and void. The answer denies all duress and coercion, and alleges that the mortgage was given to secure the sum of one thousand dollars ($1,000), and interest. The trial court found that the charges of coercion and duress set forth in the complaint were true, and that "on the 21st day of December, 1908, one P. L. Higgins, who was at said time the agent of the above-named defendant, came to the place where the plaintiff was then living with her youngest son, with whom she had always lived, the said plaintiff being alone in the house at said time, the son being away; and at that said time the said P. L. Higgins requested the plaintiff to give a mortgage on her land to the said Dale, and the plaintiff refused to do so, and thereupon the said Higgins told her that unless she gave the mortgage, Dale, the defendant, would send her son to the penitentiary, and the said

Higgins threatened to charge her son with a crime if she did not sign the mortgage, and that the said plaintiff executed the said notes and mortgage by reason of, and only by reason of, the threats which the said Higgins made, and to save her son from going to state prison; and that only for such threats she signed said mortgage, and would not have signed same but for such threats, and that said mortgage was procured through duress." His conclusions of law were that the plaintiff was entitled to judgment, declaring the said mortgage and notes null and void, and that the said mortgage be declared canceled. From this judgment an appeal was taken.

*Noble, Blood & Adamson,* for appellant.

The consent of parties to a contract must be free; it is not free, when obtained by duress, menace, threat, undue influence, or mistake.

Rev. Codes, 1905, §§ 5286–5290. McCormack v. Volsack, 4 S. D. 67, 55 N. W. 145; Comp. Laws, §§ 3504, 3505.

To threaten to have the criminal laws of the state enforced does not constitute duress or menace. Gregor v. Hide, 10 C. C. A. 290, 27 U. S. App. 75, 62 Fed. 107.

*E. R. Sinkler,* for respondent.

The mortgage is void because obtained by menace, coercion, duress, and undue influence, and because it is without consideration. Rev. Codes 1905, §§ 9217, 9218, 5286–5296.

It is duress when a mother is induced by threats to do an act to save her son from criminal prosecution. Weiser v. Welch, 112 Mich. 134, 70 N. W. 438; Shultz v. Culbertson, 46 Wis. 313, 1 N. W. 19; Cribbs v. Sowle, 87 Mich. 340, 24 Am. St. Rep. 166, 49 N. W. 588; McCormick Harvesting Mach. Co. v. Hamilton, 73 Wis. 486, 41 N. W. 727; Eadie v. Slimmon, 26 N. Y. 9, 82 Am. Dec. 395; Harris v. Carmody, 131 Mass. 51, 41 Am. Rep. 188; Williamson H. F. Co. v. Ackerman, 77 Kan. 502, 20 L.R.A.(N.S.) 484, 94 Pac. 807.

A mortgage given by a woman seventy years old, under threats to send her son-in-law to jail if she refused, was held void for duress. Bentley v. Robson, 117 Mich. 691, 76 N. W. 146.

Guilt or innocence is immaterial, in determining the question of duress. Thompson v. Niggley, 53 Kan. 664, 26 L.R.A. 803, 35 Pac. 290; Mack v. Prang, 104 Wis. 1, 45 L.R.A. 407, 76 Am. St. Rep.

848, 79 N. W. 770; Hargreaves v. Korcek, 44 Neb. 660, 62 N. W. 1086; Giddings v. Iowa Sav. Bank, 104 Iowa, 676, 74 N. W. 21; Leflore County v. Allen, 80 Miss. 298, 31 So. 815; Benedict v. Roome, 106 Mich. 378, 64 N. W. 193.

Equity will cancel a mortgage given through fear and threats of criminal prosecution of a relative. Davis v. Smith, 68 N. H. 253, 73 Am. St. Rep. 584, 44 Atl. 384; Henry v. State Bank, 131 Iowa, 97, 107 N. W. 1034; Meech v. Lee, 82 Mich. 274, 46 N. W. 398.

Promise to suppress a prosecution will not support a promise to pay money. Racine-Sattley Mfg. Co. v. Pavlicek, 21 N. D. 222, 130 N. W. 229.

Findings fully sustained by the evidence will not be reversed by the appellate court. Jasper v. Hazen, 4 N. D. 1, 23 L.R.A. 58, 58 N. W. 454; James River Nat. Bank v. Weber, 19 N. D. 702, 124 N. W. 952; Hostetter v. Brooks Elevator Co. 4 N. D. 357, 61 N. W. 49.

A contract of suretyship must be supported by a sufficient consideration. Plaintiff was merely a surety—without consideration. Davis v. Wells, F. & Co. 104 U. S. 159, 26 L. ed. 686; Allison v. Wood, 147 Pa. 197, 30 Am. St. Rep. 726, 23 Atl. 559; Kulenkamp v. Groff, 71 Mich. 675, 1 L.R.A. 594, 15 Am. St. Rep. 283, 40 N. W. 57; 27 Am. & Eng. Enc. Law, 446, 447, and cases cited; 26 Am. & Eng. Enc. Law, 411, and cases cited.

The release of the mortgage on the government homestead was no consideration for the new mortgage. Sharpe v. Rogers, 12 Minn. 174, Gil. 103; Nichols v. Mitchell, 30 Wis. 329; Hooker v. Knab, 26 Wis. 511; Newell v. Fisher, 11 Smedes & M. 431, 49 Am. Dec. 66; New Hampshire Sav. Bank v. Colcord, 15 N. H. 119, 41 Am. Dec. 686; Taylor v. Weeks, 129 Mich. 233,. 88 N. W. 466; Luken's Appeal, 143 Pa. 386, 13 L.R.A. 582; Duck v. Antle, 5 Okla. 152, 47 Pac. 1056; Long v. Towl, 42 Mo. 545, 97 Am. Dec. 355; Price v. First Nat. Bank, 62 Kan. 743, 64 Pac. 639; Robinson v. Jewett, 116 N. Y. 40, 22 N. E 224; 27 Am. & Eng. Enc. Law, 494.

BRUCE, J. (after stating the facts as above). There is much in the evidence in this case to support the claim of the plaintiff.. We are satisfied, however, that there is no such clear and convincing proof of fraud or duress as would justify us in setting aside the mortgage. There

is evidence to the effect that the plaintiff was sixty-seven years old, that she had five living children, that Cassius Englert was the youngest son. She testified that she had not seen him since the 5th day of August, 1910, when he left the country, charged with having sold a mortgaged threshing machine, that they had lived together up to that date for a number of years upon his farm; that on the 21st day of December, 1908, between 1 and 2 o'clock P. M. one P. L. Higgins drove to the farm with a liveryman by the name of Johnson; that he knocked at the door, and asked where the boy, Cassius, was; that she told him that he was at Columbus after coal; that Higgins next said that "Cad (Cassius), he wanted—he had some papers that he wanted me to make out—said he had committed a criminal offense and he would send him to state prison—Mr. Dale could send him to state prison, and would if I didn't fix them up—Mr. Dale thought if he came to me I would fix it up;" that she believed what he said; that she asked Higgins to wait until her boy came home, but he said he could not wait; that she was pretty badly scared, and thought that perhaps he would send her boy to the penitentiary; that her health was bad at the time and she was excited; that she signed the notes and mortgage to save her son from going to state prison; that she did not owe Mr. Dale anything; that she had no reason for signing the notes and mortgage except to save her boy; that she thought Higgins drew up the mortgage while he was at her house, that he was writing for quite awhile, he said he was a notary public and had authority to handle these papers; that after she signed the mortgage she asked Higgins to wait until the boy would come; that John Johnson, the liveryman, was out in the barn at the time of the talk about putting her son into the penitentiary. She testified that Higgins told her that her son "had mortgaged property and didn't tell Mr. Dale, and had taken the bankrupt law," and that she believed if she didn't sign the mortgage that they would put her son in the penitentiary; that Higgins didn't tell her that her son had sold mortgaged property, he said that he had mortgaged property; that she didn't have any knowledge of any agreement between her son and with Mr. Dale for the giving of this mortgage, and that Mr. Higgins didn't tell her about any such agreement; that Mr. Higgins didn't tell her that Mr. Dale wanted her to give this mortgage so that he could release the preliminary mortgage on Cad's homestead; that she didn't

complain to Mr. Dale until two years after (last fall); that she had written to him in the May before, and asked him if he had canceled the mortgage or released the mortgage; that she didn't see Mr. Dale before, because she supposed that as long as Mr. Dale held that (the mortgage), he wouldn't make him (Cassius), any trouble; that Higgins talked with her, and the threats were made about half an hour before Johnson came in, and that he did not hear them; that at the actual time she signed the papers there wasn't anything said about putting her boy in the penitentiary, nor was anything said at the time that Johnson witnessed them; that her son at this time, or prior to this time, started to go through bankruptcy, but she did not know whether he went through. She said "that Higgins told her that her son had mortgaged property and had taken the benefit of the bankrupt law, and didn't tell Mr. Dale, and Mr. Dale could send him to state prison,—that is just exactly what he said to me." The witness Johnson, the liveryman, testified that he witnessed the mortgage, and that while he was in the house nothing was said about sending the plaintiff's son to the penitentiary. He, however, fully corroborated the plaintiff in her statement that he was absent for quite a little while at the barn, taking care of his horses. He also testified that when he and Higgins drove away from the house, Higgins told him to "keep still about what was going on." The witness Higgins denied having used any duress or coercion. He testified that an arrangement had been made with the son for a release of the mortgage on the government homestead and the taking of a mortgage on the mother's premises, and that the mortgage was executed by the mother in furtherance of such agreement. He does not deny, however, that he told Johnson to keep still about what was going on. The defendant, Dale, also testifies to an agreement having been made with the son for the transfer of the mortgages. There is also testimony that the son, after the execution of the mortgage in question, sold an engine, on which the defendant had a chattel mortgage, and left the country. There is evidence to show that before he left he went to the office of Mr. Sinkler, attorney for the plaintiff, to make arrangements for bringing the action at bar, and that the said Sinkler never saw the plaintiff until the morning of the trial. Sinkler testifies that in the month of February, 1910, Cassius Englert told him about the matter, and that later one Wallie George came to his office and said he was acting for Mr. Dale in the

25 N. D.—38.

matter of the mortgage, and also told him that Cassius Englert had been guilty of selling mortgaged property, and that if he didn't fix the matter up he would send him to the penitentiary; that the said Sinkler thought the mortgaged property was a team of horses, and that they didn't say anything to him about an engine.    It is also shown that about this time the said Sinkler communicated with the defendant, Dale, about the mortgage, and that on the 3d day of January, 1910, over a year after the giving of the mortgage, and more than a month after Dale had been notified that proceedings were going to be instituted against him, the release on the mortgage on the homestead of Cassius Englert was recorded.

The defendant's contention is that there is no proof of duress in the case.    He also contends that the evidence shows laches on the part of the plaintiff, the action not being brought until over two years after the giving of the mortgage.    He also contends that the evidence shows that the sons were the parties chiefly instrumental in starting the suit, and argues that the proof shows conclusively a conspiracy on the part of the sons not merely to have the mortgage on Cassius's farm released, but subsequently to have that on the farm of his mother declared void. He contends that this action was really brought by the sons, and not by the mother.

Upon a careful perusal of the record, we see much in this contention. We are, at any rate, well satisfied that no clear and convincing proof of fraud or duress is shown, such as must be furnished before we are justified in setting aside an instrument of the nature of the one before us.    In the place, indeed, of being convinced that a fraud was committed upon the plaintiff, we read in the record evidence of a fraudulent attempt on the part of the plaintiff and her two sons to defraud the defendant.    Plaintiff must have known that the prior mortgage on her son's homestead was to be and had been released.    She testifies that she was induced to sign the mortgage upon her own farm, because of some threat that her son Cad would be prosecuted by Dale for mortgaging property and then going into bankruptcy, when the evidence shows that Dale was a witness for her son in those very bankruptcy proceedings.    She admitted that she lived with her son on his place at the time, and had never been absent from him, and had lived with him there for two years after signing the mortgage and until he left

the country, for the reason, as given by his brother, that "he was getting himself into trouble by staying." Yet at no time before the bringing of the suit did she take any steps to cancel the mortgage, and never said anything about it until May 27, 1910, when she merely wrote Mr. Dale to ask if the "mortgage had been released," or that "she wanted to see him (Dale) about the mortgage." It is inconceivable that during these two years she should not have spoken to her sons of the visit to her and her execution of the papers, and that at least one of her sons should not have acquainted her with the facts. There are only two conclusions to be had, and these are, either that she executed the mortgage voluntarily, or that the criminal offense that she referred to was not a bogus one, but a real one, which the evidence shows that her son may in fact have committed before the visit, that of mortgaging her horses for his own debt and in his own name. In the latter case her mortgage would not have been deemed to have been executed under duress. Gregor v. Hyde, 10 C. C. A. 290, 27 U. S. App. 75, 62 Fed. 107; Compton v. Bunker Hill Bank, 96 Ill. 301, 36 Am. Rep. 147; Hilborn v. Bucknam, 78 Me. 482, 57 Am. Rep. 816, 7 Atl. 272; Landa v. Obert, 45 Tex. 539; Sanford v. Sornberger, 26 Neb. 295, 41 N. W. 1102. Added to these are the facts that the action was started by the sons, and all the negotiations with the attorney were had by them, and even then not until after Cad had left the country and just after the recording of the release of the mortgage on his own land. It is to be remembered that the plaintiff in her testimony was incoherent as to what crime Higgins had charged her son with having committed. The only suggestion of fraud, indeed, that there is to be found, is in her report of a conversation with Higgins, which is flatly contradicted by him, and the fact of the visit of Higgins and his driver, Johnson, in the absence of her sons. It is to be remembered, however, that these parties stopped at the farms of both sons on their way out, and did not find them in; and the inference, if any, is that they desired that the sons should know of their intended visit to their mother. There is also, of course, evidence of fraud in Higgins' admonition to Johnson to keep quiet about the matter, but this admonition can well be accounted for by the fact that Cad was in financial straits, and the natural desire of Dale to keep his negotiations with him hidden from other creditors. We, too, do not approve of the practice of an agent acting as a notary public in mort-

gages and deeds which are taken on behalf of his principal, and such is condemned in many jurisdictions. The practice, however, seems to be common in North Dakota, and seems to be sanctioned by the weight of authority (1 Cyc. 555); and in view of the practice and the sanction of the weight of authority, we can hardly at this time set aside a conveyance for this reason. We do not, on a perusal of the record, see that clear and convincing evidence of fraud which will justify us in setting aside the mortgage, especially as to do so would be to deprive the defendant of his security for his debt, and leave the two farms to be inherited by the two sons, free from all debts and encumbrances, though the debt from Cad is unpaid and he has left the country as a practical fugitive from justice.

But counsel for respondent contends that there was a lack of consideration for the mortgage, or at any rate a failure of consideration. He contends that the release of a mortgage given on an unproved homestead is no consideration. He also contends that the respondent was simply a surety in the transaction, and that such contract required a consideration, and that the promise to release was not complied with, and that therefore there was a failure of consideration, which avoided the mortgage. We think, however, that there is nothing in this contention. The evidence shows that a release of the mortgage was executed by Dale on April 22, 1909, and nearly two years before the bringing of the action at bar. It also shows that immediately after the execution of the mortgage by the mother, Dale told the son Cad that he could have the release whenever he desired it. It is true that the release was not recorded until January 19, 1910, and probably after Dale had some knowledge that proceedings might be instituted against him. There was no obligation, however, on the part of Dale, the mortgagee, to record the release, provided that it was executed and acknowledged in proper form, which it was. See § 6173, Rev. Codes. There was no failure of consideration, and the delay in recording is evidence against, rather than in favor of, the respondent. The inference, if any, is that Cassius Englert kept the release until the last moment, so that his creditors would know nothing of its existence, and did not record the same until he was about to start proceedings against Dale for the cancelation of the second mortgage, and in which case he would naturally desire the record to show a release of the prior one. Counsel, too, is

in error in thinking that a mortgage upon a government homestead on. which patent has not issued is a nullity. Section 2296 of the U. S. Rev. Stat. U. S. Comp. Stat. 1901, p. 1398, which provides that "no lands acquired under the provisions of . . . [the homestead act] shall in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor," has repeatedly been held as intended as a prohibition on the involuntary appropriation of the homesteader's land by way of execution or attachment before final proof, but not to contemplate a restriction upon his power to voluntarily mortgage his interest therein. Webber v. Ladlier, 26 Wash. 144, 90 Am. St. Rep. 726, 66 Pac. 400; Dickerson v. Bridges, 147 Mo. 235, 48 S. W. 825; Stark v. Duball, 7 Okla. 213, 54 Pac. 453; Adams v. McClintock, 21 N. D. 483, 131 N. W. 394.

The judgment of the District Court is reversed, and judgment ordered in favor of the defendant and appellant, and dismissing the action of plaintiff and respondent.

## On Petition for Rehearing.

BRUCE, J. Counsel for respondent argues that the finding of the trial court must prevail in this case. He states that "in reviewing findings of fact made by a trial court it must be presumed on appeal that the decision of such a court is sustained by the weight of evidence, and unless it appears that the testimony clearly preponderates against such decision, the presumption that the findings are right must prevail." He is clearly in error, however, in so far as the present action is concerned. This is an equity case, and has come before this court for a trial de novo under the provisions of the so-called Newman act (§ 7229, Rev. Codes, 1905). The rule which prevails in cases which are triable by a jury does not prevail in equity cases, which are tried and appealed under the provisions of § 7229. A trial de novo, in short, is a trial de novo.

Counsel also confuses a lack of consideration with a failure of consideration. He alleges in his complaint that "the plaintiff further states that the said mortgage was and is entirely without consideration," and seeks to sustain this proposition by proof that the promise to release a mortgage upon the son's unpatented government homestead was

the consideration for the subsequent mortgage, and that this promise was not complied with prior to repudiation of the mortgage by the plaintiff. This, to our mind, would be a failure, and not a lack of consideration. This was the main reason for the statement made by the court that a mortgage made upon a government homestead before final proof was not a nullity; because upon the theory of a nullity, and this theory alone, could there be any contention that there was no consideration for the execution of the mortgage by the mother. Counsel says that he never put forth such a contention, and "that it is an imputation of ignorance for this court to say that he so contended." He certainly, however, stated in his brief that "a mortgage upon government land by one in possession of same is void if the homesteader never perfects his title to the land under the homestead laws. The mortgage does not attach until the patent issues," and upon this statement he based his claim that "the agreement to release or the releasing of the preliminary mortgage on government land" furnished no consideration for the mother's mortgage. So, too, practically all, if not all, of the cases which he cites, are cases in which the contract or mortgage for which the second obligation was sought to be substituted or to operate as a security was void or in which the original agreement was itself void.

Counsel also claims that there is no proof in the record that the release of the Cassius Englert mortgage was delivered before the defendant, Dale, had notice that Mrs. Englert intended to repudiate the subsequent mortgage upon her property. He, however, has entirely failed to realize on whom the burden of proof rests in this case. It is for the plaintiff to show that the release was not delivered, and not for the defendant to show that it was. There is certainly nothing in the evidence to show that it was not delivered prior to the notice of the alleged repudiation of the subsequent mortgage, while the date of the release is prior to that time. It is to be remembered that this is an action to set aside a written instrument, which upon its face is valid and has all the outward indications of an instrument that was solemnly executed. It must be plain that the burden of proof to show either an absence or a failure of consideration is upon the plaintiff. This, indeed, is not only the rule of the common law, but the rule which the statute prescribes. See §§ 5325 and 5326, Rev. Codes 1905.

The petition for a rehearing is denied.