[No. 11614.  Department One.  March 9, 1914.]

·JOHN INGEBRIGT, *Appellant*, v. SEATTLE TAXICAB & TRANSFER COMPANY, *Respondent.*[1]

CONTRACTS—PERFORMANCE OR BREACH—TERMINATION. A contract by plaintiff to furnish a motor truck and work for a baggage company for one year, at a certain rate per day, of specified hours, except one hour off for lunch, is breached and may be terminated, where plaintiff, knowing that defendant had a contract for carrying all the baggage to certain hotels, collected and retained part of the compensation, justifying by saying that he always tried to do that during the noon or lunch hour.

CONTRACTS—VALIDITY—DURESS—EVIDENCE—SUFFICIENCY. Where an employee had unlawfully appropriated money belonging to the employer, it is not duress, invalidating a sale of a motor truck, for the employer, in order to force a settlement, to point out to the employee that he was subject to arrest and imprisonment and to threaten the same, where there was no actual arrest or statement that a prosecution had been commenced, and where, after a full discussion, during which the employee twice left the office and voluntarily returned, he made a bill of sale of the truck in settlement of the claim against him, accepting a check for the balance which he retained.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered May 16, 1913, dismissing an ac-

[1]Reported in 139 Pac. 188.

tion for damages, on withdrawing the case from the jury. Affirmed.

*H. E. Foster*, for appellant.

*Brightman, Halverstadt & Tennant*, for respondent.

Gose, J.—This is an action for damages, (a) for a breach of contract, and (b) for the value of property obtained by duress. At the close of the plaintiff's testimony, the court withdrew the case from the jury and entered a judgment in favor of the defendant. The appeal followed.

On the 23d day of September, 1912, the appellant was employed by the respondent for the period of one year under the terms of a written contract, whereby he agreed to furnish an assistant and a motor truck and devote them to the service of the respondent in the conduct of its baggage business, from seven a. m. to twelve o'clock midnight, at an agreed price of $15 per day. The appellant was allowed one hour off duty at "lunch time" and also at "dinner time," without deduction for loss of time. The contract further provided that the appellant should be allowed for overtime, but "that there should be no overtime for services performed at any time of the day or night except between twelve o'clock midnight and seven o'clock a. m." The appellant was discharged on the 23d day of December, 1912. In his first cause of action, he seeks to recover damages for a wrongful termination of the contract. In his second cause of action, he alleges that the respondent, by threats of arrest and imprisonment, induced him to convey to it a motor truck of the value of $2,100, for a consideration of $335.

The appellant testified that the respondent had a contract for carrying all the baggage to certain hotels, and that he, knowing that fact, collected and retained the compensation for a part of it. He sought to justify his conduct by saying: "I always tried to do that during my noon hour or my lunch hour." When asked how often this happened, he said:

"I don't remember." To the question, "When was your lunch hour?" he answered: "Any time I had time to take it;" that he "never had any regular lunch hour." This was a flagrant violation of both the letter and the spirit of his contract, and fully warranted the respondent in terminating it.

In respect to the second cause of action (the threats of imprisonment) the appellant testified that the president of the respondent said to him "that it wouldn't take Prosecuting Attorney Murphy but a short time to send me to Walla Walla;" that "It would be nice for you to lay up in jail tonight;" that "It wouldn't be very nice for you to lay upon the hill in jail tonight," and that "You better settle up. Give us the truck and square up." He was asked: "What, if anything, was said by either of them about when they would send you to jail?" and answered: "There was nothing said about what time, but they said this, that it wouldn't be very nice for me to stay in jail that night." A witness called by the appellant gave substantially the same testimony. The appellant had paid $1,335 on the truck. He conveyed it to the respondent and accepted its check for $335, which he later cashed, and still retains the money. He testified that the respondent claimed that he had received $1,500 for which he had given no account, and that he would not have conveyed to it the motor truck except for threats and through fear of going to jail, although he said that he did not know of any crime that he had committed. The testimony further shows that the settlement, which included the making of a bill of sale for the motor truck and a release of the contract of employment, occupied about two hours. During this time, the appellant twice went away from the office of the respondent's president in company with its assistant manager, for the purpose of getting papers connected with the settlement, and his return in each instance was wholly voluntary. After returning the second time, he signed a bill of sale conveying the motor truck to the respondent, received its check, and signed a release of the contract. He testified

that there was no representation that a criminal action had been commenced or that a warrant had issued.

Do these facts constitute duress? We think not. Under the appellant's testimony, he had unlawfully appropriated money which belonged to respondent. The respondent had a right to say to him that, if he did not settle, it would commence a civil action. It also had a right to point out to him that he was subject to a criminal prosecution. Under his own testimony, the good faith of the charge that he was subject to criminal prosecution cannot be questioned. It is not duress for one who in good faith believes that he has been wronged to threaten the wrongdoer with a civil suit; and if the wrong includes a violation of the criminal law, it is not duress to threaten him with a criminal prosecution. *Hilborn v. Bucknam*, 78 Me. 482, 7 Atl. 272, 57 Am. Rep. 816. A mere threat to imprison, without an actual arrest, does not constitute duress. *Bodine v. Morgan*, 37 N. J. Eq. 426; *Thorn v. Pinkham*, 84 Me. 101, 24 Atl. 718, 30 Am. St. 335. Threats of imprisonment, not accompanied with the statement that the prosecution has been commenced, do not constitute duress. *Buchanan v. Sahlein*, 9 Mo. App. 552; *Sulzner v. Cappeau-Lemley & Miller Co.*, 234 Pa. St. 162, 83 Atl. 103, 39 L. R. A. (N. S.) 421. In the case last cited the court said:

"Ordinarily, when no proceedings have been commenced, threats of arrest, prosecution, or imprisonment do not constitute legal duress to avoid a contract; the threats must be made under such circumstances that they excite the fear of imminent and immediate imprisonment."

The threat, in order to be coercive, must be of an unlawful use of process. *Loan & Protective Assn. etc. v. Holland*, 63 Ill. App. 58. There is no duress where neither a warrant has been issued nor proceedings commenced. *Elston v. Chicago*, 40 Ill. 514, 89 Am. Dec. 361. "Threats of criminal prosecution, unaccompanied by threats of immediate imprisonment, do not constitute duress." *Beath v. Chapoton*, 115 Mich. 506, 73 N. W. 806, 69 Am. St. 589.

See, to the same effect, *Williams v. Stewart*, 115 Ga. 864, 42 S. E. 256.

"It is those contracts made under fear of unlawful arrest, and not those executed under threat of lawful imprisonment, that can be avoided for duress." *McCormick Harvesting Machine Co. v. Miller*, 54 Neb. 644, 74 N. W. 1061.

See, to the same effect, *Alexander v. Pierce*, 10 N. H. 494; *Englert v. Dale* (N. D.), 142 N. W. 169.

"When a party seeks to avoid a contract because of duress by imprisonment, it is not enough simply to show that he was imprisoned. He must go further and show that the imprisonment was unlawful, or if lawful, that while imprisoned he was subjected to some coercion that deprived him, in some respect, of his free agency." *Harrison Township v. Addison*, 176 Ind. 389, 96 N. E. 146.

The appellant's testimony shows that he was knowingly guilty of moral turpitude; that the respondent claimed that he had appropriated $1,500 of its money; that it offered to settle on the basis finally agreed upon; that its officers pointed out to him that he was subject to arrest and imprisonment; that after a full discussion and after he had twice left the office and voluntarily returned, he made the settlement. It seems conclusive that, under the admitted facts, it would be trifling with the law to submit the case to a jury. Upon the appellant's own testimony and upon the testimony of his only witness, the court would be compelled to set aside a verdict in his favor, if one should be returned.

Appellant has cited authorities which seem to sustain his contention that the case should have been submitted to the jury upon the second cause of action. They are, however, in conflict with the weight of authority and what we deem to be the better rule. They are, also, in conflict with the principle announced in *Thorne v. Farrar*, 57 Wash. 441, 107 Pac. 347, 135 Am. St. 995, 27 L. R. A. (N. S.) 385. The better view is that one smarting under a wrong in seeking civil redress

may say to the wrongdoer that he is subject to a criminal prosecution, if the wrong is both civil and criminal in its nature, and that a settlement of the civil injury under such circumstances is not subject to the reproach of duress.

The case was correctly decided on both causes of action. The judgment is affirmed.

CROW, C. J., ELLIS, MAIN, and CHADWICK JJ., concur.