## SECURITY STATE BANK, a Corporation, v. MARGARETHA RETTINGER and Mathias Rettinger.

(153 N. W. 971.)

**Real estate mortgage — setting aside — action for — evidence — must be clear and convincing.**

It being conceded that the evidence necessary to set aside a real estate mortgage must be clear, satisfactory, and convincing, the evidence in this case is examined, and found not to be of that nature.

Opinion filed July 2, 1915.

Appeal from the District Court of Stark County, *Crawford,* J. Reversed.

*Harvey J. Miller* and *Pugh & Rigler,* for appellant.

The evidence upon which to base a judgment for the setting aside

and annulment of a mortgage must be clear, satisfying, and convincing. Anderson v. Anderson, 17 N. D. 275, 115 N. W. 836.

The presumption is that the deed is valid and binding, and this will not be overcome by barely preponderating circumstances. Jasper v. Hazen, 4 N. D. 1, 23 L.R.A. 58, 58 N. W. 454.

The proof, to warrant the setting aside of a mortgage, must be so clear and of such positive character as to leave in the mind of the chancellor no hesitation or substantial doubt. McGuin v. Lee, 10 N. D. 160, 86 N. W. 714.

The apparent consent carried by such an instrument, duly executed and delivered, will be deemed real, free, and voluntary, unless it is affirmatively shown to have been overcome by duress, menace, or fear, or undue influence. Anderson v. Anderson, 17 N. D. 275, 115 N. W. 836; Smith v. Jensen, 16 N. D. 408, 114 N. W. 306; Englert v. Dale, 25 N. D. 587, 142 N. W. 169; Schinzer v. Wyman, 2 N. D. 489, 146 N. W. 898.

The threats alleged and relied upon must come within the definitions of the statute, or there is no duress or menace. Englert v. Dale, 25 N. D. 587, 142 N. W. 169; Beath v. Chapoton, 115 Mich. 506, 69 Am. St. Rep. 589, 73 N. W. 806; McCormick Harvesting Mach. Co. v. Miller, 54 Neb. 644, 74 N. W. 1061; Wolff v. Bluhm, 95 Wis. 257, 60 Am. St. Rep. 115, 70 N. W. 73; Hilburn v. Bucknam, 78 Me. 482, 57 Am. Rep. 816, 7 Atl. 272; Ingebrigt v. Seattle Taxicab & Transfer Co. 78 Wash. 433, 139 Pac. 188; Bodine v. Morgan, 37 N. J. Eq. 426; Thorn v. Pinkham, 84 Me. 101, 30 Am. St. Rep. 335, 24 Atl. 718; Buchanan v. Sahlein, 9 Mo. App. 552; Sulzner v. Cappeau-Lemley & M. Co. 234 Pa. 162, 39 L.R.A.(N.S.) 421, 83 Atl. 103.

Threats must be made under such circumstances as to excite real fear of immediate imprisonment. Moyer v. Dodson, 212 Pa. 344, 61 Atl. 937; Harmon v. Harmon, 61 Me. 227, 14 Am. Rep. 556; Higgins v. Brown, 78 Me. 473, 5 Atl. 269; Hilborn v. Bucknam, 78 Me. 482, 57 Am. Rep. 816, 7 Atl. 272; Sieber v. Weiden, 17 Neb. 582, 24 N. W. 215; Wilkerson v. Hood, 65 Mo. App. 491; Russell v. McCarty, 45 Ga. 197; Gregor, Real Estate (Deeds) §§ 81, 82; 5 Enc. U. S. Sup. Ct. Rep. 683; Brown v. Pierce, 7 Wall. 205, 215, 19 L. ed. 134, 137; Harris v. Cary, 112 Va. 362, 71 S. E. 551; Ann. Cas. 1913A, 1350.

31 N. D.—16.

The note and mortgage are, in themselves, prima facie evidence of due consideration. The burden of proof is upon defendants to show the contrary. First Nat. Bank v. Lamont, 5 N. D. 393, 67 N. W. 145; Red River Valley Nat. Bank v. Barnes, 8 N. D. 438, 79 N. W. 880; First Nat. Bank v. Golder, 89 Neb. 377, 131 N. W. 600; 32 Cyc. 30; Brandt, Suretyship, 3d ed. § 25.

*H. J. Blanchard* and *W. F. Burnett,* for respondents.

To constitute duress by threats of imprisonment, it is necessary that they should proceed from the mortgagee; but it is immaterial by whom they are communicated to the mortgagors. 77 Cyc. 1125; State Bank v. Hutchinson, 62 Kan. 9, 61 Pac. 443.

Threats of imprisonment of the husband for alleged crimes, duly communicated to the wife, are sufficient to constitute duress. Schultz v. Catlin, 78 Wis. 611, 47 N. W. 946; Giddings v. Iowa Sav. Bank, 104 Iowa, 676, 74 N. W. 21; 27 Cyc. 1125, note 97; National Bank v. Cox, 47 App. Div. 53, 62 N. Y. Supp. 314; Taylor v. Jaques, 106 Mass. 291.

"If the threats of arrest and prosecution of a son operate to deprive the father of his *free-will power,* and constrain the execution of the mortgage, the actual guilt or innocence of the son upon the charge of embezzlement was not material, in determining whether or not there was duress." Williamson, Hallsell Frazier Co. v. Ackerman, 77 Kan. 502, 20 L.R.A.(N.S.) 484, 94 Pac. 807; Wheeler v. Pettyjohn, 14 Okla. 71, 76 Pac. 117; Heaton v. Norton County State Bank, 59 Kan. 281, 52 Pac. 876.

BURKE, J. This is an action to foreclose a mortgage upon a quarter section of land in Stark county, securing a $4,600 note signed by the Rettingers, husband and wife. The wife answered, alleging that she was the owner of said land; that on the 9th day of August, 1912, one Otto Thress, acting as agent for the plaintiff, procured and caused her to execute and deliver said mortgage, by means of threats that, if she did not so do, plaintiff would cause the arrest of her husband for obtaining money or property under false pretenses, which said threats were false and groundless. Trial was had in the court below, where defendants prevailed. Plaintiff appeals, demanding a trial *de novo.* There is but one question involved—duress. A decision of

the issue involves a somewhat brief résumé of the testimony. There were but three witnesses—Mr. and Mrs. Rettinger and Otto Thress. Mrs. Rettinger's testimony was given through an interpreter, and is hard to reproduce in this opinion. In substance, she testified that Mr. Thress said that he would "put her man in jail." That he told her that two or three times; that she would be confined in two months, and was scared and was sick immediately after the conversation; that her husband was her only means of support, and that was the reason she had signed the mortgage; that she could not read nor speak English; that she was sixteen years of age. Upon cross-examination, she stated that Thress had spoken to her in German; admitted her signature to the mortgage, and stated that she had gone to the office of an attorney in Glendive, where the notary public had put a seal on the mortgage. She also stated that she did not know what she was signing, and that the mortgage was never read to her. She also testifies that the time she was informed that there was a mortgage against her land was on the following January, when her mother told her the bank had begun foreclosure. Mr. Rettinger testified that Mr. Thress came to Glendive, and went to the power house, where witness was unloading a car of coal, and had a paper there, and told him that if he and his wife did not sign the note and mortgage he would have to take the witness back with him.

Upon cross-examination he testified:

Q. Isn't it a fact, Mr. Rettinger, that you then made the statement that you would not secure it, and you would not care if they put you in jail; that you would just as soon be in jail—sooner than where you are now?

A. He told me that I did not care, and he said that he would take me with him right away.

Q. After stating that you did not care, isn't it a fact that I told you there was no satisfaction to us to see you in jail? That what we wanted was the money, or the security for the money?

A. Yes. That is what you said.

Q. Then, Mr. Rettinger, isn't it a fact that I told you, at that time, on the coal car, that it was immaterial whether you and your wife made that mortgage and note, or not; that I would guarantee you absolutely,

that the Security State Bank would not prosecute you at any time you wanted to come to Hettinger county?

A. Yes, he told me that there, but he said all that he wanted was to have my wife sign. He said he did not care whether we signed or not, but he would take me with him right away. Before we parted for dinner, I told him I would ask my wife what she would do.

Q. When we were up in the lawyer's office, did I threaten you or your wife at that time with arrest?

A. He never said it up there, but he told me that before we went up there.

Upon cross-examination relative to the debt secured by the mortgage, Rettinger states that he owed every cent of it. That this note was given in payment of other notes which he owed the Security State Bank, and which were secured by mortgages upon an engine and horses.

The testimony proceeds:

Q. Mr. Rettinger, how many horses were included in that mortgage?
A. I could not say for sure. Seven or eight.
Q. In fact, it was ten, Mr. Rettinger?
A. Somewhere about eight or nine.
Q. Did you own the horses that were mortgaged?
A. Yes, they were my horses.
Q. Isn't it a fact that your father owned those horses?
A. My father used to own them, but I was the owner later on.
Q. When did you become the owner, Mr. Rettinger?
A. About four years ago; I paid the taxes.
Q. Isn't it a fact that these same horses were claimed by your father, and your father refused to deliver those horses in the mortgage foreclosure?
A. Yes. My father told him, but they never paid any attention. They just went and took the outfit.
Q. Who did?
A. Julius Hollst took it.
Q. Did you ever pay anything on this note?
A. On which note?
Q. The note we are suing on.
A. No.

Q. And you owe the face value of the note to-day to the Security State Bank,—is that a fact?

A. Yes, I owe every cent of it.

Upon redirect examination, he testifies that he went home and repeated the threats to his wife.

Upon the part of the plaintiff, Mr. Thress testifies that he went to Glendive to secure, if possible, a settlement of the accounts between the plaintiff and defendants, and had asked Mr. Rettinger what he could do. That he started off by saying that he did not care whether or not they put him in jail; that he told Rettinger at that time there was absolutely no satisfaction in putting him in jail; that they wanted the money, or security; and that he absolutely guaranteed him that no criminal prosecutions would be started against him, if he wanted to go back to Hettinger county, North Dakota. That Mr. Rettinger agreed to give security if his wife would sign. That he made no threat at that time to Mr. Rettinger, nor to his wife. That after dinner both came to the office of a local attorney; that the wife was cheerful at all times, and participated in the conversation for about two hours. He then proceeds to state that at a prior time, while the Rettingers were still in North Dakota, and about the 31st of May, 1912, he had threatened them with criminal prosecution for obtaining money under false pretenses, in mortgaging horses that belonged to the father, and which horses the father had already mortgaged to somebody else. He further testifies that, at the time of the execution of the mortgage in question, the Security bank had pending against the defendant certain actions, one of which was an attachment, and that the same were dismissed in consideration of the giving of the security aforesaid.

(1) We believe it is conceded that, to set aside the mortgage, the evidence must be clear, satisfactory, and convincing. In Anderson v. Anderson, 17 N. D. 275, 115 N. W. 836, it is said: "The burden is upon her to show that the deed was not her free and voluntary act. The presumption is that the deed is valid and binding, and this presumption will not be overcome by barely preponderating circumstances. On the contrary, duress, menace, or undue influence must be shown by evidence of the clearest, of the most satisfactory character, before the deed will be set aside. In Jasper v. Hazen, 4 N. D. 1, 23 L.R.A.

58, 58 N. W. 454, the court said: 'Hence courts have, with great uniformity, in this class of cases, required the proof that should destroy the recital in a solemn instrument to be clear, satisfactory, and specific, and of such a character as to leave in the mind of the chancellor no hesitation or substantial doubt.' McGuin v. Lee, 10 N. D. 160, 86 N. W. 714. It must appear that the deed would not have been given if the threats or undue influence had not been used. Unless it is clearly shown that the deed was given under the influence of fear, it will be deemed to have been given freely and voluntarily. The apparent consent will be deemed real unless affirmatively shown to have been overcome by duress, menace, or fear, or undue influence." See also: Smith v. Jensen, 16 N. D. 408, 114 N. W. 306; Englert v. Dale, 25 N. D. 587, 142 N. W. 169; Schinzer v. Wyman, 27 N. D. 489, 146 N. W. 898; Comp. Laws 1913, §§ 5842–5852; Beath v. Chapoton, 115 Mich. 506, 69 Am. St. Rep. 589, 73 N. W. 806; McCormick Harvesting Mach. Co. v. Miller, 54 Neb. 644, 74 N. W. 1061, holding that the fear must be of an unlawful imprisonment, and that threat of a lawful arrest is not grounds for vitiating the instrument. Also: Wolff v. Bluhm, 95 Wis. 257, 60 Am. St. Rep. 115, 70 N. W. 73; Hilborn v. Bucknam, 78 Me. 482, 57 Am. Rep. 816, 7 Atl. 272, where it is held that one who believes he has been wronged may threaten the wrongdoer with a criminal prosecution, and that the same will not vitiate security obtained thereby. Also: Ingebrigt v. Seattle Taxicab & Transfer Co. 78 Wash. 433, 139 Pac. 188; Bodine v. Morgan, 37 N. J. Eq. 426; Sulzner v. Cappeau-Lemley & M. Co. 234 Pa. 162, 39 L.R.A.(N.S.) 421, 83 Atl. 103. See also notes in 26 L.R.A. 48; 20 L.R.A.(N.S.) 484; and 37 L.R.A.(N.S.) 539. Without going further into the authorities, upon which there seems to be little or no conflict between the attorneys in this case, we announce our conclusion, from a careful perusal of the evidence, that the defendants have not established the threat of an arrest, and especially of an *unlawful* arrest, by evidence of that clear, satisfactory, and convincing nature required in such cases. Respondent insists that the presumption of innocence supplies the proof that the arrest threatened was unlawful. This we do not believe. The burden was upon them to show that the mortgage was executed by threats of an *unlawful* arrest. Simple proof of a threat of arrest is not enough. They must also

prove that it was unlawful. Moreover, in this case, there is evidence introduced by the plaintiff, showing that there were some grounds at least for a lawful arrest. Judgment of the District Court is reversed, and the mortgage will be reinstated and foreclosure ordered.