## ALONZO BETTS v. THE VILLAGE OF READING.

*Payment—Duress—Illegal license tax.*

1. The question whether the facts shown, when undisputed, constitute an involuntary payment, is one of law, and therefore for the court to decide.

2. Where for several years a saloon-keeper, who is neither aged, nor infirm in intellect, nor ignorant of the law or of his rights under it, pays a license tax imposed by the common council of a village under a void ordinance, on the threat of the village attorney of prosecution in case of non-payment, the payment is voluntary, and he cannot recover the money so paid; citing *Bank v. Watkins*, 21 Mich. 483; *Nickodemus v. East Saginaw*, 25 Id. 456; *Detroit v. Martin*, 34 Id. 170.

Error to Hillsdale. (Lane, J.) Submitted on briefs July 1, 1892. Decided July 28, 1892.

*Assumpsit.* Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*George A. Knickerbocker* and *Guy M. Chester,* for appellant.

*St. John & Lyon,* for defendant.

MORSE, C. J. Section 7, chap. 5, of the charter of the village of Reading provides that—

"The common council shall have power to grant licenses to authorize persons to exercise the business of tavern-keeper, inn-holder, common victualer, or saloon-keeper, within said village, and may impose such fees, to be paid into the village treasury on the granting of such license, as they may see fit: *Provided,* that no license shall be granted for the sale of spirituous liquors or intoxicating drinks."

The common council adopted, to take effect May 1, 1879, an ordinance as follows:

"An ordinance relative to saloons, common victualers, taverns, and other places.

"It is hereby ordained by the common council of the village of Reading, Hillsdale county, State of Michigan, that any person who shall keep a billiard saloon, common victualer saloon, eating saloon, tavern, or other place where spirituous or intoxicating liquors, wine, or beer are sold, furnished, or given away, within the corporate limits of said village of Reading, shall pay a license fee of five hundred dollars per year; and any person who shall assume to exercise such business or occupation, without having first obtained such license and paying the said five hundred dollars, shall forfeit and pay for each and every day he shall so exercise such business or occupation the sum of two (2) dollars, to be recovered by action of debt in the corporate name of said village, together with the cost of prosecution, before any justice of the peace in said county. This shall not be construed to include druggists or apothecaries authorized to sell for medicinal purposes. And it is hereby ordained by said common council of said village that section No. 2 of by-law No. 13 of said village is hereby repealed."

The plaintiff was a resident of the village, and knew that this ordinance was in existence when he opened a saloon in 1883. This suit is brought to recover back from the village moneys paid under said ordinance from 1883 to 1887, inclusive, claiming that the ordinance was illegal and void, and that the money was paid without consideration, and under duress. During this time plaintiff complied with the State law, and was therefore duly authorized to carry on the business of selling intoxicating liquors under such law. The moneys sought to be recovered in this action were paid to the village marshal and other officers of the defendant. For these payments plaintiff received receipts in the shape of licenses signed by the president, recorder, and marshal. None of these officers ever made any threats of prosecution to plaintiff in case he did not pay; but plaintiff testifies that one Martin L. Bently, who was the village attorney, threatened him with prosecution if he did not pay the said license tax, and said to him that it would

cost him more than to pay the license, and that one Weaver had been so prosecuted; that these threats induced him to pay, and that the payments were made under protest, either verbal or written. No written protests were offered in evidence. The ordinance was plainly void, but the circuit judge directed a verdict for the defendant, presumably upon the theory that the payments were voluntary.

The contention of the plaintiff is that the case is ruled by *Cribbs v. Sowle*, 87 Mich. 340, and that the facts, as testified to by the plaintiff, were sufficient to amount to duress under the opinion of the Court in that case; and that, in any event, the question whether the payment was voluntary should have been submitted to the jury. There was no testimony offered by the defendant. The question whether the facts shown—which facts were undisputed—constituted an involuntary payment was one of law, and not of fact, and therefore for the court to decide. The court was not in error. This case is plainly distinguishable from *Cribbs v. Sowle, supra,* and the cases there cited. The plaintiff is not shown to have been either aged, or infirm in intellect, or ignorant of the law or of his rights under it. The case falls clearly within the following decisions of this Court: *First National Bank v. Watkins,* 21 Mich. 483; *Nickodemus v. East Saginaw,* 25 Id. 456; *City of Detroit v. Martin,* 34 Id. 170.

The judgment below is affirmed, with costs.

The other Justices concurred.